```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
EDWARD NEWMAN,                  :
                                :
            Plaintiff,          :
                                :
       -against-                :     No. 16 Civ. 9768 (JFK)
                                :        OPINION & ORDER
                                :
THE REPUBLIC OF BULGARIA,       :
                                :
            Defendant.          :
------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/02/2017

APPEARANCES

FOR PLAINTIFF EDWARD NEWMAN:
    Thomas J. Foley, Esq.
    FOLEY GRIFFIN, LLP

FOR DEFENDANT THE REPUBLIC OF BULGARIA:
    Christina Hioureas, Esq.
    Theresa Roosevelt, Esq.
    FOLEY HOAG LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Defendant the Republic of Bulgaria ("Bulgaria") to dismiss the complaint filed by Plaintiff Edward Newman ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). For the reasons discussed below, Bulgaria's motion is granted and the complaint is dismissed in its entirety.

### I.     Background

    Unless otherwise indicated, the following facts are drawn from the complaint and declarations submitted by both parties in relation to this motion. Plaintiff is a resident of the County

1

of New York. ("Complaint," Def.'s Notice of Removal Ex. A, ECF No. 1-1 at 29 (filed Dec. 19, 2016).) Bulgaria is a foreign sovereign country that maintains embassies and consulates in the United States. (Id. ¶ 2.) On or about August 10, 2015, Bulgaria owned the premises located at 328 E. 86th Street in New York City and utilized it "for the purpose of housing diplomatic personnel representing the Republic of Bulgaria at the United Nations." (Id. ¶¶ 5, 10.) The front entrance to 328 E. 86th Street (the "Residence") is covered by a canopy that extends outward from the building and covers the sidewalk in front of the entrance. (Id. ¶ 11; Stoeva Decl. ¶ 7.) As of August 10, 2015, two primary posts supported the canopy and attached to them were two auxiliary poles extending at roughly a 30-degree angle to provide additional support. (Stoeva Decl. ¶ 7.) Each auxiliary pole extended away from the primary post "in a direction parallel to the curb." (Id.)

On August 10, 2015, Plaintiff alleges that one of these auxiliary poles—Plaintiff refers to it as a "support brace"—was "laying across the sidewalk in the path of pedestrians . . . constitut[ing] a dangerous and trap-like condition." (Compl. ¶¶ 14-15.) While Plaintiff was lawfully walking in front of the Residence, he tripped and fell over the auxiliary pole that was lying across the sidewalk and sustained serious injuries, including a nasal fracture, a tear of the medial meniscus of his

left knee, and a tear of the rotator cuff in his right shoulder. (Id. ¶¶ 19-20; Newman Decl. ¶ 3.)

According to Lachezara Stoeva, a Bulgarian diplomat who resides at the Residence, on August 11, 2015, Bulgaria received a Notice of Violation and Hearing from the City of New York "concerning an auxiliary pole on the curb in front of the building." (Stoeva Decl. ¶¶ 2, 5, 10.) The notice provided that the condition had a "cure date" of September 21, 2015. (Id.) On August 12, 2015, Ms. Stoeva requested that a member of her staff contact a contractor to address the defect and the contractor removed both auxiliary poles that same day. (Id. ¶ 11.)

Plaintiff filed this action in the Supreme Court of New York on September 16, 2016. (See "Notice of Commencement of Action," Def.'s Notice of Removal Ex. A, ECF No. 1-1 at 49-50.) On December 19, 2016, Bulgaria removed Plaintiff's action to this Court pursuant to 28 U.S.C. 1441(d). (See Notice of Removal, ECF No. 1.) Plaintiff asserts two causes of action: (1) negligence based upon the tortious activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq, and (2) negligence based upon the commercial activity exception to the FSIA. (Compl. ¶¶ 10-37.)

On January 17, 2017, Bulgaria moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). (Def.'s Mem. of L. in Support of Mot. to Dismiss

3

at 1.)  In its motion to dismiss, Bulgaria argues that this Court lacks subject matter and personal jurisdiction over Bulgaria pursuant to the FSIA. (Id.)  In his opposition to Bulgaria's motion to dismiss, Plaintiff withdraws his claims premised on the commercial activity exception to the FSIA, § 1605(a)(2), "in light of [Bulgaria's] submissions" in the motion to dismiss. (Pl.'s Mem. of L. in Opp. to Def.'s Mot. to Dismiss at 1.)  Thus, the only issue remaining is whether the tortious activity exception to the FSIA applies to Plaintiff's first claim for negligence against Bulgaria.

## II. Discussion

### A.  Legal Standard

#### 1.  Rule 12(b)(1) and Foreign Sovereign Immunity

"The FSIA is the sole source for subject matter jurisdiction over any action against a foreign state." Cabiri v. Gov't of the Republic of Ghana, 165 F.3d 193, 196 (2d Cir. 1999).  The FSIA provides that a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604.  Once the defendant presents a prima facie case that it is a foreign state, "the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged

foreign sovereign." Cabiri, 165 F.3d at 196 (internal quotation marks omitted). Accordingly, if none of the exceptions to immunity applies, the court lacks both subject matter and personal jurisdiction over the defendant. Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993).

In a motion to dismiss pursuant to Rule 12(b)(1), the defendant may challenge "either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). Where, as here, evidence relevant to the jurisdictional question is before the court, "the district court . . . may refer to [that] evidence." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). If a defendant brings a Rule 12(b)(1) challenge to jurisdiction under the FSIA, the court "must look at the substance of the allegations" to determine whether one of the exceptions to immunity applies. Cargill Int'l, 991 F.2d at 1019. In doing so, the court must "look beyond the pleadings to factual submissions, including affidavits, submitted to the court in order to resolve a factual dispute." Robinson, 269 F.3d at 140-41.

### 2. Tortious Activity Exception to Immunity

Plaintiff argues that his negligence claim falls under the tortious activity exception to sovereign immunity, § 1605(a)(5). The section reads in pertinent part:

5

> (a)  A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . .
>
> (5) . . . in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to . . .
>
> (A) any claim based upon the exercise of performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused . . . .

28 U.S.C. § 1605(a).

Thus, jurisdiction under the tortious activity exception exists only if "(i) the plaintiff claims some injury caused by the tortious act or omission of a foreign state; and (ii) this act or omission was non-discretionary." Robinson, 269 F.3d at 139-40 (internal quotation marks omitted).

In assessing whether an alleged action is a tort, the court must apply the substantive law of the state in which the locus of injury occurred, here, New York law. Swarna, 622 F.3d at 144. Accordingly, the court's analysis on subject matter jurisdiction in a FSIA case will often mirror the inquiry the court would make on the merits. Robinson, 269 F.3d at 143-44.  To state a cause of action for negligence under New York law, the plaintiff must allege that (1) the defendant owed a duty to plaintiff, (2) the defendant breached that duty, (3) the breach proximately

caused the plaintiff's injury, and (4) the plaintiff sustained damages. Salvador v. N.Y. Botanical Garden, 71 A.D.3d 422, 423 (N.Y. App. Div. 2010).

An act or omission is discretionary "if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, 681 F.3d 103, 111–12 (2d Cir. 2012).  If the tortious act or omission is "'based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused,' the foreign sovereign nation retains its immunity from suit under the FSIA." Id. at 112 (quoting 28 U.S.C. § 1605(a)(5)(A)).

### B.    Analysis

There is no dispute that Bulgaria is a foreign state, (see Compl. ¶ 2), thus the burden falls on Plaintiff to provide evidence that Bulgaria's negligent acts fall under the tortious activity exception to the FSIA.

### 1.    The Tortious Act or Omission

Under New York law, property owners must "keep the sidewalks abutting their properties in a reasonably safe

condition, much in the same way they are obligated to maintain their respective premises." Early v. Hilton Hotels Corp., 73 A.D.3d 559, 560 (N.Y. App. Div. 2010); see also N.Y.C. ADMIN. CODE § 7-210(a) ("It shall be the duty of the owner of real property abutting any sidewalk . . . to maintain such sidewalk in a reasonably safe condition."). Thus, Bulgaria owed a duty to Plaintiff to keep the sidewalk outside of the Residence in a reasonably safe condition.

"It is well settled that in order to hold an owner liable for a dangerous condition within a premises, it must be established that the owner created the dangerous condition alleged . . . or failed to remedy the condition, despite having prior actual or constructive notice of it." Early, 73 A.D.3d at 560-61 (internal citations omitted). Thus, to show that Bulgaria breached its duty to Plaintiff to keep the sidewalk in a reasonably safe condition, Plaintiff must establish that Bulgaria either created or had prior notice of the defective condition caused by the fallen auxiliary pole. See id. at 561.

Plaintiff argues that Bulgaria "caused or created the foregoing dangerous and trap-like condition." (Compl. ¶ 16.) Plaintiff alleges that his injury was caused by Bulgaria's negligence in "constructing or allowing to be constructed the canopy . . . in a manner not consistent with general building and construction standards; in hiring persons to repair and/or

8

install the canopy . . . who were inept and incompetent; [and] in hiring people to do work on the canopy . . . who were inept or incompetent." (Id. ¶ 34.)  However, Plaintiff provides no specific allegations regarding how Bulgaria caused the auxiliary pole to fall into the sidewalk, nor does he address this argument in his opposition brief.

As the Second Circuit has held, these types of conclusory statements, absent any specific allegations or evidence, are insufficient to support an exception to sovereign immunity under the FSIA. See Robinson, 269 F.3d at 146 (sustaining jurisdiction on "generic" allegations of negligence "absent an assertion or evidence of a factual predicate for such jurisdiction[] would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints").  Further, Bulgaria has established that it did not "uninstall or disconnect any of the support posts or auxiliary poles on or before August 10, 2015," nor "did it direct anyone else to do so." (Stoeva Decl. ¶ 8.) Thus, Plaintiff has failed to show that Bulgaria caused the dangerous condition that led to his fall and subsequent injury.

Plaintiff next argues that Bulgaria had both actual and constructive notice of the fallen auxiliary pole.  Plaintiff argues that Bulgaria had actual notice because Ms. Stoeva "personal[ly] observ[ed] that the auxiliary pole had broken away

from the main support and was creating a tripping hazard." (Pl.'s Mem. of L. in Opp. to Def.'s Mot. to Dismiss at 6.) Although Plaintiff cites no direct evidence for this claim, elsewhere in his brief he refers to Ms. Stoeva's "admission" that she received the Notice of Violation and Hearing on August 11, 2015, which refers to the fallen pole as a "trip hazard." (Id. at 3.) However, Ms. Stoeva did not receive the Notice of Violation and Hearing until one day after Plaintiff's fall, thus Plaintiff has failed to show that Bulgaria had prior actual notice of the defective condition. (See Stoeva Decl. ¶ 10.)

Furthermore, Bulgaria has provided sufficient evidence that it did not have actual notice of the fallen auxiliary pole prior to Plaintiff's fall. According to Bulgaria, on the day of Plaintiff's accident, Ms. Stoeva was serving as the "Chargé d'affaires a.i." of the Residence and any building maintenance issues were to be reported to her in this role. (Stoeva Decl. ¶ 9.) None of the approximately fifteen to twenty individuals residing in the building reported any problem with the canopy or auxiliary poles to Ms. Stoeva on or before August 10, 2015. (Id.) Further, the individual who served as the Chargé d'affaires a.i. prior to Ms. Stoeva from July 21 to August 8, 2015, stated that he did not receive "any report of defect in front of the building" nor did he see any defect himself. (See Angelov Decl. ¶ 5.) Thus, Bulgaria has established that it did

not have actual notice of the fallen auxiliary pole prior to Plaintiff's fall. See Costanzo v. Woman's Christian Ass'n of Jamestown, N.Y., 938 N.Y.S.2d 404, 405 (App. Div. 2012) (defendants met their burden of establishing that they did not have actual notice of a defective condition on a stairway where defendants' employees testified that they were not aware of any complaints regarding the defect nor did they witness any defect prior to the plaintiff's fall).

Plaintiff also argues that Bulgaria had constructive notice of the fallen auxiliary pole because "the defendant should have had a policy in place to inspect its premises for defective and dangerous conditions" and "had the defendant performed such an inspection on the day of [Plaintiff's] accident, it would have discovered" the fallen pole. (Pl.'s Mem. of L. in Opp. to Def.'s Mot to Dismiss at 6-7.) Plaintiff further states that when he returned to the location the day after his accident, the pole had still not been removed, which "constitutes further evidence of [Bulgaria's] ongoing failure to properly inspect its property." Id. at 7.

A defendant owner is charged with constructive notice "when the condition is visible, apparent, and exists for a sufficient length of time prior to the occurrence of an accident to permit the defendant to discover and remedy the condition." Early, 73 A.D.3d at 561 (emphasis added). "The absence of evidence

demonstrating how long a condition existed prior to a plaintiff's accident constitutes a failure to establish the existence of constructive notice as a matter of law." Id.; see also Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 837-38 (1986) (plaintiff did not establish constructive notice where the record contained no evidence that anyone observed the defect prior to the accident or that the defect had been present for "some period of time"). Plaintiff provides no evidence regarding how long the trap-like condition existed prior to his accident, only that the fallen auxiliary pole was not removed until two days after he tripped and fell. Thus, Plaintiff has failed to establish the existence of constructive notice.

Plaintiff has failed to allege or provide evidence that Bulgaria either created or had actual or constructive notice of the defective condition caused by the fallen auxiliary pole and, thus, has failed to show that his claim is for a tortious act or omission caused by Bulgaria. Because Plaintiff has failed to allege a tort claim, the Court need not consider whether the Bulgaria's alleged conduct was "discretionary" for purposes of the FSIA.

Plaintiff has failed to show that the tortious activity exception to immunity applies, thus the Court lacks both subject matter and personal jurisdiction to entertain this suit under 28 U.S.C. § 1605(a)(5).

## CONCLUSION

Accordingly, for the foregoing reasons, Bulgaria's motion to dismiss is hereby GRANTED and the complaint is dismissed in its entirety.

**SO ORDERED.**

Dated: New York, New York
May 2, 2017

John F. Keenan
United States District Judge